1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MAGDALINA KALINCHEVA,

11          Plaintiff,                    No. 2:12-cv-2231 JAM DAD PS

12       v.

13   JESSE NEUBARTH,                      FINDINGS AND RECOMMENDATIONS

14          Defendant.

15   _____/

16          Plaintiff, Magdalina Kalincheva, is proceeding in this action pro se.  This matter

17   was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. §

18   636(b)(1).  On August 27, 2012 plaintiff filed a complaint and a request for leave to proceed in

19   forma pauperis pursuant to 28 U.S.C. § 1915.

20          Plaintiff has submitted an in forma pauperis application that make the showing

21   required by 28 U.S.C. § 1915(a)(1).  However, a determination that a plaintiff qualifies

22   financially for in forma pauperis status does not complete the inquiry required by the statute.  "'A

23   district court may deny leave to proceed in forma pauperis at the outset if it appears from the face

24   of the proposed complaint that the action is frivolous or without merit.'"  Minetti v. Port of

25   Seattle, 152 F.3d 1113, 1115 (9th Cir. 1998) (quoting Tripati v. First Nat. Bank & Trust, 821

26   F.2d 1368, 1370 (9th Cir. 1987)).  See also Smart v. Heinze, 347 F.2d 114, 116 (9th Cir. 1965)

1  ("It is the duty of the District Court to examine any application for leave to proceed in forma

2  pauperis to determine whether the proposed proceeding has merit and if it appears that the

3  proceeding is without merit, the court is bound to deny a motion seeking leave to proceed in

4  forma pauperis.").  Moreover, the court must dismiss an in forma pauperis case at any time if the

5  allegation of poverty is found to be untrue or if it is determined that the action is frivolous or

6  malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against

7  an immune defendant.  See 28 U.S.C. § 1915(e)(2).  A complaint is legally frivolous when it

8  lacks an arguable basis in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989);

9  Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  Under this standard, a court must

10  dismiss a complaint as frivolous where it is based on an indisputably meritless legal theory or

11  where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at 327; 28 U.S.C. §

12  1915(e).

13          To state a claim on which relief may be granted, the plaintiff must allege "enough

14  facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550

15  U.S. 544, 570 (2007).  In considering whether a complaint states a cognizable claim, the court

16  accepts as true the material allegations in the complaint and construes the allegations in the light

17  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg.

18  Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242,

19  1245 (9th Cir. 1989).  Pro se pleadings are held to a less stringent standard than those drafted by

20  lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the court need not accept as

21  true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  Western

22  Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

23          The minimum requirements for a civil complaint in federal court are as follows:

24          A pleading which sets forth a claim for relief . . . shall contain (1) a
           short and plain statement of the grounds upon which the court's
25          jurisdiction depends . . . , (2) a short and plain statement of the
           claim showing that the pleader is entitled to relief, and (3) a
26          demand for judgment for the relief the pleader seeks.

Fed. R. Civ. P. 8(a).

Here, plaintiff's complaint is deficient in several respects. First, plaintiff's complaint does not contain a short and plain statement of the grounds upon which the court's jurisdiction depends. Instead, in her complaint plaintiff merely alleges in conclusory fashion that this "case belongs in federal court under federal questions jurisdiction because it is about federal laws . . ." (Compl. (Doc. No. 1) at 1.) Plaintiff's complaint thereafter lists roughly a dozen federal statutory provisions, none of which establish the court's jurisdiction over the claims which plaintiff is apparently seeking to pursue.

Jurisdiction is a threshold inquiry that must precede the adjudication of any case before the district court. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). Federal courts are courts of limited jurisdiction and may adjudicate only those cases authorized by federal law. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Willy v. Coastal Corp., 503 U.S. 131, 136-37 (1992).[1] "Federal courts are presumed to lack jurisdiction, 'unless the contrary appears affirmatively from the record.'" Casey v. Lewis, 4 F.3d 1516, 1519 (9th Cir. 1993) (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 546 (1986)).

Lack of subject matter jurisdiction may be raised by the court at any time during the proceedings. Attorneys Trust v. Videotape Computer Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996). A federal court "ha[s] an independent obligation to address sua sponte whether [it] has subject-matter jurisdiction." Dittman v. California, 191 F.3d 1020, 1025 (9th Cir. 1999). It is the obligation of the district court "to be alert to jurisdictional requirements." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 593 (2004). Without jurisdiction, the district court cannot decide the merits of a case or order any relief. See Morongo, 858 F.2d at 1380.

---

[1] Congress has conferred jurisdiction upon the federal district courts as limited by the United States Constitution. U.S. Const. Art. III, § 2; 28 U.S.C. § 132; see also Ankenbrandt v. Richards, 504 U.S. 689, 697-99 (1992).

1    The burden of establishing jurisdiction rests upon plaintiff as the party asserting

2    jurisdiction.  Kokkonen, 511 U.S. at 377; see also Hagans v. Lavine, 415 U.S. 528, 543 (1974)

3    (acknowledging that a claim may be dismissed for lack of jurisdiction if it is "so insubstantial,

4    implausible, . . . or otherwise completely devoid of merit as not to involve a federal controversy

5    within the jurisdiction of the District Court"); Bell v. Hood, 327 U.S. 678, 682-83 (1946)

6    (recognizing that a claim is subject to dismissal for want of jurisdiction where it is "wholly

7    insubstantial and frivolous" and so patently without merit as to justify dismissal for lack of

8    jurisdiction ); Franklin v. Murphy, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984) (holding that even

9    "[a] paid complaint that is 'obviously frivolous' does not confer federal subject matter

10   jurisdiction . . . and may be dismissed sua sponte before service of process.").

11          In addition, plaintiff's complaint does not contain a short and plain statement of

12   her claim showing that she is entitled to relief.  In this regard, the complaint before the court

13   consists largely of vague and conclusory allegations.  For instance, plaintiff alleges that

14   defendant Neubarth (plaintiff's ex-husband apparently) "knowingly stole everything" from

15   plaintiff in their "illegal divorce," wanted to keep plaintiff "dependent on him and his hostage

16   like Jaycee Dugard," and that plaintiff is "illegally boarded and . . . imprisoned in the laundry

17   room which is unfit to live."  (Compl. (Doc. No. 1) at 3, 16.)

18          Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a

19   complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that

20   state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones v.

21   Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers 'labels

22   and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'  Nor

23   does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual

24   enhancements.'"  Ashcroft v. Iqbal, 556 U.S.662, 678 (2009) (quoting Twombly, 550 U.S. at

25   555, 557.  A plaintiff must allege with at least some degree of particularity overt acts which the

26   defendants engaged in that support the plaintiff's claims.  Jones, 733 F.2d at 649.

1          Moreover, in several other respects plaintiff's complaint fails to state a cognizable

2    claim.  In this regard, central to plaintiff's complaint is her allegation that defendant Neubarth

3    signed an immigration form guaranteeing that he would provide plaintiff with a certain level of

4    financial support.  In this regard, the complaint alleges the plaintiff, an immigrant from Bulgaria,

5    and defendant Neubarth were married on August 9, 1991 in Bulgaria.  (Compl. (Doc. No. 1) at

6    4.)  Plaintiff alleges that in connection with their marriage, defendant Neubarth signed an "I-354

7    affidavit of support" which, according to plaintiff, is a "guarantee to [plaintiff] that [she] cannot

8    be poor, cannot be homeless, and cannot be on government assistance of any kind . . ."  (Id.)

9    Plaintiff also refers to a conversation she allegedly had with an immigration attorney who

10   informed plaintiff that the Seventh Circuit Court of Appeals had recently enforced a "contract"

11   claim based on such an affidavit of support.  (Id. at 19.)

12          Though the Seventh Circuit decision referred to in plaintiff's complaint is not

13   identified, the court believes she is referring to the case of Wenfang Liu v. Mund, 686 F.3d 418

14   (7th. Cir. 2012).  There, the Seventh Circuit found that the affidavit of support found on

15   Immigration Form I-864 "is in the form of a contract between the sponsor and the United States,"

16   that requires the sponsor to support the sponsored alien at 125 percent of the poverty income

17   level subject to few excusing conditions, of which divorce is not one.  Id. at 420.  Moreover, the

18   court concluded that such a sponsored alien is authorized to bring suit "in any appropriate court"

19   and the right of support conferred by federal law exists apart from rights addressed in state

20   divorce proceedings.  Id. at 419-20.

21          However, the Form I-864 at issue in Wenfang Liu was created pursuant to the

22   Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and thus

23   could not have been the form signed by defendant Neubarth in 1991 because that form did not

24   exist at that time.  Rather, it is clear that defendant Neubarth could only have signed the I-134

25   form.  See Compl. (Doc. No. 1) at 4 (mistakenly referring to an I-354 form).  That I-134 form did

26   not carry with it the same contractual obligations imposed by the I-864 Form, and thus "'the

                                                          5

contractual obligations imposed by the IIRIRA on an affidavit of support made on an I-864 Form do not attach to affidavits of support made on an old I-134 Form.'" Cobb v. Cobb, No. 1:12-cv-00875-LJO-SKO, 2012 WL 2620524, at *3 (E.D. Cal. July 5, 2012) (quoting Tornheim v. Kohn, No. 00 CV 5084 (SJ), 2002 WL 482534, at *4 (E.D. N.Y. Mar. 26, 2002)). See also Cheshire v. Cheshire, No. 3:05-cv-00453-TJC-MCR, 2006 WL 1208010, at *2 (M.D. Fla. May 4, 2006) ("federal courts have consistently found that Form I-134 is not a legally enforceable contract against a sponsor by a sponsored immigrant").

Finally, plaintiff's complaint also alleges that her divorce from defendant Neubarth in 1992 was illegal and that those proceedings resulted in an unfair determination. Plaintiff alleges that because defendant Neubarth guaranteed her a minimum level of support pursuant to the I-134 affidavit of support, the parties' 1992 divorce order should have "create[d] income sources" for her, provided her with real estate or allowed her to "buy [a] duplex with [her] settlement money," and "to have home and rental income and to work as property manager if [she] cannot work as medical doctor." (Compl. (Doc. No. 1) at 6.) In her complaint plaintiff also alleges that the divorce agreement was never the subject of negotiation, she was forced to sign that agreement by defendant Neubarth because she had no car and defendant Neubarth would only give her a ride home if she signed the agreement. (Id. at 8.) Finally, plaintiff alleges that pursuant to the divorce settlement agreement, "only $45,031 was paid" to her instead of the correct amount of $116,806 she was entitled to. (Id. at 9.)

In terms of relief, plaintiff asks this court to: invalidate the 1992 "divorce judgment from case 244725;" dismiss an unlawful detainer action currently pending against plaintiff in state court because that action is "wrongfully based on our divorce judgment case;" order defendant Neubarth to pay her $210,000,000, buy her a "Scion 2012 iQ, or T2B, or hybrid, and Smart for Two electric car," and to create a "sufficient, permanent, guaranteed income source for plaintiff." (Id. at 23-25.) The complaint also seeks an order allowing plaintiff to "import from UK husband of [her] choice]," directing the "district attorney [and] public defender" to

1  "destroy to burn illegal records," to expunge plaintiff's "illegal arrests," and to transfer "all cases

2  from Superior [C]ourt and HSA" to the FBI for investigation of fraud and false accusations.  (Id.

3  at 25-17.)

4            Although the allegations of plaintiff's complaint are difficult to decipher, to the

5  extent they can be understood it is clear that there are a myriad of potential bars to plaintiff's

6  action in this court even if a cognizable claim for relief of some sort could be stated.

7            Plaintiff is advised in this regard that "[e]ven when a federal question is presented,

8  federal courts decline to hear disputes which would deeply involve them in adjudicating domestic

9  matters." Thompson v. Thompson, 798 F.2d 1547, 1558 (9th Cir. 1986).  Moreover, while

10  federal courts have an obligation to exercise jurisdiction where it exists, particularly in civil

11  rights cases, abstention may be required under the decision in Younger v. Harris, 401 U.S. 37

12  (1971), when there are ongoing state judicial proceedings implicating important state interests

13  and there is adequate opportunity in the state proceedings to raise federal questions.

14  Confederated Salish v. Simonich, 29 F.3d 1398, 1405 (9th Cir. 1994).  State judicial proceedings

15  involving domestic relations clearly implicate important state interests.  Ankenbrandt v.

16  Richards, 504 U.S. 689, 703 (1992) (holding that the domestic relations exception to federal

17  subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony and

18  child custody decrees); Coats v. Woods, 819 F.2d 236, 237 (9th Cir. 1987) (affirming abstention

19  where the case raised constitutional issues but was "at its core a child custody dispute"); Peterson

20  v. Babbitt, 708 F.2d 465, 466 (9th Cir. 1983) (finding abstention appropriate despite the presence

21  of constitutional issues where the plaintiff sought visitation with children who were wards of the

22  state court)

23            Furthermore, under the Rooker-Feldman doctrine, federal district courts lack

24  jurisdiction to review alleged errors in state court decisions.  Dist. of Columbia Court of Appeals

25  v. Feldman, 460 U.S. 462, 476 (1983) (holding that review of state court determinations can be

26  obtained only in the United States Supreme Court).  The doctrine applies to "cases of the kind

7

from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). "The purpose of the doctrine is to protect state judgments from collateral federal attack." Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001). Pursuant to this doctrine, a federal district court is prohibited from exercising subject matter jurisdiction over a suit that is "a de facto appeal" from a state court judgment. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). A federal district court may not examine claims that are inextricably intertwined with state court decisions, "even where the party does not directly challenge the merits of the state court's decision but rather brings an indirect challenge based on constitutional principles." Bianchi v. Rylaarsdam, 334 F.3d 895, 900 n.4 (9th Cir. 2003). "A number of courts have held that the Rooker-Feldman doctrine . . . bars federal court review of final state divorce decrees." See In re Schwartz, 409 B.R. 240, 248 (1st Cir. BAP 2008) (citing Davis v. United States, 499 F.3d 590, 595 (6th Cir. 2007); see also Ignacio v. Judges of U.S. Court of Appeals, 453 F.3d 1160, 1165-66 (9th Cir. 2006) (affirming district court's dismissal of the case "because the complaint is nothing more than another attack on the California superior court's determination in [plaintiff's] domestic case").

Finally, "[r]es judicata bars a suit when 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" ProShipLine Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 968 (9th Cir. 2010) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). See also In re Schwartz, 409 B.R. at 248 (claim of contract based on Form I-864 Affidavit of Support brought after divorce proceedings barred by Rooker-Feldman or res judicata). Res judicata is applicable "when there is '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between

/////

1  parties.'" ProShipLine Inc., 609 F.3d at 968 (quoting Stewart v. U.S. Bancorp, 297 F.3d 953,

2  956 (9th Cir. 2002)).

3          For all the reasons set forth above, plaintiff's complaint should be dismissed for

4  failure to state a claim upon which relief can be granted.

5          The undersigned has carefully considered whether plaintiff may amend her

6  pleading to state a claim upon which relief can be granted.  "Valid reasons for denying leave to

7  amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg.

8  Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  See also Klamath-Lake

9  Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that

10  while leave to amend shall be freely given, the court does not have to allow futile amendments).

11  In light of the obvious deficiencies of the complaint filed by plaintiff in this action as noted

12  above, the court finds that it would be futile to grant plaintiff leave to amend.

13          Accordingly, IT IS HEREBY RECOMMENDED that:

14          1.  Plaintiff's August 27, 2012 application to proceed in forma pauperis (Doc. No.

15  2) be denied;

16          2.  Plaintiff's August 27, 2012 complaint be dismissed without leave to amend;

17          3.  Plaintiff's August 27, 2012 motion to dismiss dissolution judgment 244725

18  (Doc. No. 3) be denied as moot in light of the dismissal of her complaint;

19          4.  Plaintiff's October 12, 2012 motion for defendant to refund $218,403,708.68

20  and $92,902.17 (Doc. No. 5) be denied as moot in light of the dismissal of her complaint;

21          5.  Plaintiff's October 12, 2012 motion for defendant to provide house, car,

22  laptop, internet, and cell phone (Doc. No. 6) be denied as moot in light of the dismissal of her

23  complaint;

24          6.  Plaintiff's October 12, 2012 motion to build and buy 500 sq ft house and 5

25  duplexes (Doc. No. 7) be denied as moot in light of the dismissal of her complaint; and

26          7.  This action be dismissed.

1    These findings and recommendations will be submitted to the United States

2  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

3  fourteen (14) days after being served with these findings and recommendations, plaintiff may file

4  written objections with the court.  A document containing objections should be titled "Objections

5  to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file

6  objections within the specified time may, under certain circumstances, waive the right to appeal

7  the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8  DATED: October 25, 2012.

9

10

11

12  DAD:6
   Ddad1\orders.pro se\kalincheva2231.ifpden.f&rs

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE